Good morning, Your Honors. I'm Priscilla Wong, representing Nestor Mayorga. Could you bring the mic down? Yes, thank you. Try to speak a little louder, too. All right. I'm Priscilla Wong, representing Nestor Mayorga, the petitioner in this case. The facts of the case have already been stated in my brief and also in the government's brief, so I don't think there's any need to repeat that. I'd like to invite questions from the panel. Any questions? You're not going to make an argument? I'm sorry? You're not making an argument? Well, the arguments that I've made I've already presented in my brief, and I don't really have anything further to add. Well, I guess to start then, that's a strange way to proceed, if I must say, but the question is why are the – how – what is your basic argument about the social group to which he belonged, that he was being persecuted by Gaza? We argue that he is a former officer of the Colombian army, and as such, because of his activity in the army, that he was being persecuted and that he's entitled to asylum. Well, he wasn't actually a former member at any point that he was in the United – in his country, right? He was only a former member now. He's – he – well, it all depends on the – how you frame the timetable. He left the country – or he left his own country in December of 2002, and then he went back to formally resign from the army in – I think it was also December of 2002, and formally resigned in February of 2003. While he was – he remained in Colombia from February 2003 until June of 2003. So during that period of time – Well, he went back to resign, and then he was a former military for a while in the country. Exactly. Until he could get another visa approved. Right. Because the one visa he had was only to come one time, and he went – he thought he was going to come right back, but it turned out they wouldn't let him come right back. Yes. But if you're contending that's his social group, is there any evidence in the record that former military officers have been targeted for persecution because they were former military officers? I think that in the earlier – during the trial – I want to talk – what's in the record? Is there any evidence in the record about any other former military officers that have been targeted? In the country condition reports from the Department of State, there is a section on persecution or guerrillas hunting down people who are in the – were in the government, including the former – or army officers. So you're saying the country report? Yes. So what you have here is the only – one incident of a threat while he was a former officer? Is that what you're saying? Most of the threats that essentially – or the early threats said resign, right? So that wouldn't suggest that there was going to be persecution against him as a former officer. They were trying to get him to be a former officer. That's what they wanted. Right. Right. And then at other points they said join us, which is not itself a ground for being persecuted under Elias Zacharias, right? Well, that's if you accept on its face Elias Zacharias as appropriate in this case. Well, the question was does Elias Zacharias apply to all refusals to join the enemy or only to refusals that are not based on political opinion of which the rebels are aware? Well, the issue in Elias Zacharias was, as framed by Justice Scalia, whether a guerrilla organization's attempt to coerce a person into performing military service, whether it necessarily constitutes persecution on account of political opinion. And I think the key word here is necessarily because it seems to suggest that there are other options available if it doesn't necessarily constitute persecution. That is, it leaves the door open to other ways of looking at this. Elias Zacharias could be distinguished from this case. If you look at the alien involved, Elias was a person apparently who had never expressed a political opinion. And the Supreme Court said that his lack of opinion could be not because of any opposition to the guerrillas who were trying to recruit him, but because he could have been indifferent to them, he could have been indecisive and couldn't decide which side he wanted to join, or he just wanted to avoid the risk. All right. So in this instance, but that's a shifting and different basis for the group. I mean, that's a claim that he was being discriminated, persecuted because of imputed political opinion, not as a former military officer, right? He was a – well, Elias Zacharias was a former military officer. No, I'm saying here, in this case. Yes. This person's asking about is there more than one claim. In your brief, you also make a claim of political opinion. And the other one is a claim of the social group. Right. Are those two independent claims? Yes. Okay. All right. So then specifically on the imputed political opinion or actual political opinion, I understand that Elias Zacharias might not apply to some circumstances. Why are these those circumstances? Well, first of all, because of the differences between the two aliens involved. Let me be more specific. What is there in the record that compels the conclusion or that allows the conclusion that your client was being persecuted because of his political opinion and not because he was refusing to join the guerrillas? Well, there is a letter from the – or a demand from the National Liberation Army, which is one of the guerrilla groups in Colombia trying to recruit Nestor Mayorga. And it says specifically that Nestor Mayorga is a member of the Armed Forces of Colombia, which is a corrupt institution. Whereas, on the other hand, the ELN, which is the guerrilla organization, stands for the freedom of the Colombian people, which then sets them up. Okay. But that's different than the social group because then what you're saying there is he refused to join the ELN, and that was what his problem was when he was – he denied their recruitment efforts. Right? Well, there are two grounds for the asylum application. One is the political opinion, and – which is one of the protected grounds, and the other is membership in the social group. So we're now – we're talking about – You have one minute if you want to save it for rebuttal. I'm sorry? You have one minute if you'd like – you don't have your over – yeah. You have one minute for rebuttal if you'd like to save it. One minute for rebuttal.  Yes, I understand.  Are there any other – No, we're going to give you one minute for rebuttal if you will sit down now. Oh, all right. Good morning. May it please the Court, I'm Paul Fiorino for the Respondent. Could you discuss the two issues separately? Yes, Your Honor. The Petitioner is relying both in her brief and throughout both on persecution, an account of political opinion, and that she claims separately that he is a member of a social group of social officers. Yes, Your Honor. The dividing line between those two claims is when he left the military. When he was in the military, he could have had a claim that he was persecuted on account of his political opinion because at that point he was not a former member of the military, and as a member of the – a current member of the military, that is not a social group, but there's case law in that. Now, you say that he no longer has a claim that he was persecuted on behalf of political opinion because he left the military? That's not exactly what I said, Your Honor. Well, that's what I'm trying to understand. As a military officer, the only claim – the only persecution he claimed he could have made was political opinion. And our position is that what happened to him, telephone calls and threatening notes, did not rise to the level of persecution. It's not – oh. So you're not saying that he wasn't persecuted on the basis of political opinion? No. No, that's not what we're saying at all. We're saying his past persecution claim fails for two reasons. One is that the threats did not rise to the level of persecution. And two – Well, why not? They were awfully specific. They were repeated. They were believable. They were from people who did things like this. He's supposed to stay there and just wait to get killed? Or for a story to get kidnapped? No, but the threats themselves are not past persecution. Case law of the circuit, Lim and others say that. Only when threats are combined with – Well, at the least, they give rise to a fear of – They do, yes. So he wasn't persecuted in the past for two reasons. It didn't rise to the level. And the note on page 381 of the record is fairly clear that they were interested in him for his military abilities. Well, they also said he was a traitor and they were going to get him no matter what because he was committed treason to the cause. There are several allusions to the fact that they were – he would join the enemy as far as they were concerned. Your Honor, I don't specifically know where in the record he was called a traitor. I do know, starting with the letter on page 381 of the record, the first telephone call he received on page 141 of the record, he was declared a military objective. The threatening phone call on page 148 of the record – Well, it said, you asshole, you rejected our cause, you disobeyed our orders, and you are going to pay for this piece of treason with your life. Okay. But we would still submit that the primary focus of the ELN was in his – at least as a military asset. Was what? His abilities as a military officer. They said the organization and mission of our intelligence network is not to allow persons like you with your training and acquired knowledge to remain in the active service of this institution. Elsewhere, Petitioner – So is that why you're saying he's not in danger of future persecution because now he's not in the military and – Yes, yes. If you want me to discuss future persecution. Now that he's out of the military, he no longer possesses the assets, abilities, knowledge, and access that the rebels wanted. And there's no evidence in the record that his status as a former military officer is known to the ELN. There's no compelling evidence that they know – Well, what does that mean? I mean, if he went back there, they wouldn't know that he was no longer in the military? Yes. Well, they wouldn't think he was in the military. Well, there's no evidence in the record that the ELN knows that he has left the military. Well, what was the evidence in the record? He did go back, resign, and then he couldn't come right back. So what was the evidence in the record during that period of time? During that period of time, there was – all the threats except one ceased. And the only threat he received during that time was a message left on his answering machine. And it's unclear from the record when that message was received. And in the two years between his resignation and his hearing before the immigration judge, there's no evidence of continuing threats. So we say that the evidence of record doesn't compel the conclusion that he has a well-founded fear of future persecution. As a member of a social group or for any other reason. What's disturbing about this case, I think, is that one can pierce the various doctrines and conclude that he hasn't made a showing, but there seems to be an awfully good chance that he's going to go back to Columbia and, in fact, be hurt or killed. Do you think that's wrong? I don't accept the proposition that he's going to go back to Columbia and be killed or hurt. Well, they were certainly after him. They're certainly mad at him. They certainly have the means to kill people. They have killed people who were former members of the government when they didn't approve of them or who they didn't approve of. So we're not going to find out whether they're going to persecute him as a former military officer until he goes back and we find out. I would agree with you, Your Honor, that if that is the case, it is disturbing. But unfortunately, he hasn't met his burden of proving on this record that he has a well-founded fear of future persecution. And that's an unfortunate result. But the role of the Court is to affirm the Board's decision, and we think the Board's decision is correct. So essentially, he would have had to stay there for a while after he resigned to find out whether there was still after him or not in order to show whether he had a well-founded fear. No. He could have, at his hearing, presented evidence, compelling evidence that – Well, what would it be if he weren't there? There would have been more threats since he left targeted toward his family. Well, he did try to introduce evidence of more threats since he left. The BIA didn't take them. Isn't that right? Yes. I believe so. All right. So maybe that's why. Well, could he have presented evidence that other people that were military officers that had been threatened, that continue to be threatened or things that – was there any of that in the record? Certainly, Your Honor, he could have. I don't believe that there is. So if there's no further questions, that would conclude our presentation. Thank you, Your Honor. Thank you. I'd like to address this issue of the threats and the ones that occurred while he was an Army officer and the ones that occurred after he resigned. Was there an attempt to submit more information with a motion to reopen or not with a motion to reopen? That's the BIA level? With the Board of Immigration Appeals, but they rejected it because they said – I forgot what regulation they cited. It was information that was probably currently available at the time of trial, and you didn't present it. So therefore, we're not going to regard it. I see. But as to evidence of persecution after he resigned from the military, we have on record the Petitioner's testimony that there was no evidence of persecution after he resigned and that he did receive a threatening phone call at his family home during the months that he was in Colombia, and also his testimony that the guerrillas don't forget people who don't accede to their demands, and the immigration judge found him credible. As to the threats, I think the cutoff is between the time that he was in the military and the time that he resigned. These threats could be seen as a continuum of persecution rather than just a stopping point during which you only regard the ones that occurred after resignation and disregard everything that happened while he's serving in the military. There is no case law that says you have to exercise that cutoff. Also, the IJ's observation that the guerrillas were only interested in the Petitioner because of his up-to-date information, and if he were to resign, they wouldn't be interested in him anymore because he wouldn't have up-to-date information, this is completely speculation on the part of the immigration judge because there is no evidence to show that they were only interested in his up-to-date information. The Petitioner had been in the military for seven years, and he had knowledge of tactics and strategy accumulated during this seven-year period. And to say that we reduce it all to up-to-date information is simply not a fact that was presented at trial. All right, counsel. We've gotten way over your rebuttal time, so thank you. Thank you.  The case just argued will be submitted. Next is Singh v. Holder. Good morning, Your Honor. Good morning. This is Hardeep Rai appearing for the Petitioner, Bulwant Singh. Your Honors, the way I see it, there's three main issues here, credibility finding, rather a lack of an explicit credibility finding, identity, and nexus. The I.J., in my opinion, rather makes an implicit credibility finding. I'm sorry, I can't hear you. Could you? The I.J., in my opinion, makes an implicit credibility determination. She says on AR 84, although the Court cannot state that there are inconsistencies in this case that would cause the Petitioner to be found incredible, it believes that the implausibility of his claim based upon the country conditions do not support it. She's taking a negative inference on the country conditions. The BIA on AR 3 says no single concern would lead us to conclude that the Petitioner's story is untrue. So do you think there was or wasn't an adverse credibility conclusion? No, Your Honor, there was not an adverse credibility conclusion. By either the I.J. or the BIA? By either the I.J. or the BIA. And the other issue there is was identity. Well, if the panel said that there was not a specific explicit adverse credibility finding, how does that affect the holding that he failed to establish his identity on the basis of documents he provided? Because the documents, I mean, there were all these fuzzy pictures. You couldn't even see them. So if may, can we still affirm the BIA on the basis of changed circumstances? No, Your Honor, because there is an implicit credibility finding, and if that's the case, then his identity should be accepted as true, his statement should be accepted as true. And he agreed the passport, the photograph is fuzzy. It's a fax copy. The original is left in Canada with the agents who helped him cross the border. He has submitted a lot of other documents. He submitted his children's birth certificates. Now, his birth certificate or his wife's birth certificate was not registered. And I.J. notes that the law only came into force in 1969 where the birth certificates were required to be registered. And he has obtained a non-availability certificate from the government. Then he gets an affidavit from his father about his date of birth, an affidavit from his maternal uncle about his wife's date of birth. And his passport has his father's name, his wife's name, and his address. So this is a pre-reality case. And there's enough. Then he's given his marriage photographs. Granted, his appearance is different in those photographs than he was in the day he was married. So then do we need to remand it? Yes, Your Honor. What do we need to remand it for? Both that there was no expert credibility finding. Rather, there was a, he should be found credible. There was an implicit credibility finding. And that he established his identity. Well, if there wasn't an adverse credibility finding, our case law seems somewhat mystifying on what we do then. Suppose we were to conclude that if he was credible, he was entitled to asylum, but there had been no adverse credibility finding. Do we remand then for a credibility finding, or do we assume that there was a, that he was credible? Leave it to the discretion of the Court, Your Honor. I'm sorry, I can't hear you. Leave it to the discretion of the Court as far as the petitioner is concerned. All right. But what does the case law say? Not whether, it doesn't seem to say it's a discretionary decision. So does it go back to make the credibility finding and to rule on all of this, or? No, there should, the case law says that the IJ cannot take a negative inference from the country conditions and then hold that as a basis for denial of the claim. It seems to be Gonzalez. So the, without an explicit adverse credibility finding, the agency must treat the petitioner's testimony as true and analyze the merits of the claim. Well, the, forgetting the identity for a moment, on the merits of the case, do you agree that the IJ and the BIA did decide the merits of the case? Not the BIA, Your Honor. The BIA mischaracterized this testimony of the petitioner. The petitioner clearly lists two reasons for the basis of his persecution, both in his asylum application, the declaration attached to it, as well as in the testimony, and the IJ acknowledges it. The IJ also in the decision mentions two reasons for the persecution. But the board, if you look at AR3, says the petitioner has only mentioned one reason of the persecution. Board says petitioner himself testified that the police were interested in him because two men jumped from his tractor and ran at a checkpoint, and uses the affidavit of his uncle Gurmeet Singh to show as if he was inconsistent. So the board has clearly mischaracterized the petitioner's testimony. What? I mean, I find this distinction between not meeting the burden of proof and not making a credibility finding extremely ephemeral. For example, the BIA says the Respondent failed to credibly establish his identity. Now, why doesn't that say that he's not credible about establishing his identity? That's on 3. On 3, Your Honor. Yes, Your Honor. Well, the BIA – I know the BIA has adopted the IJ as a decision, Your Honor, and they say to the extent that he failed to establish his identity and failed to carry his burden of proof. But he has established his identity, and he has carried his burden of proof. Well, the BIA says he failed to credibly establish his identity. Now, so what does that mean? It doesn't mean that he was not credible with regard to his identity? Yes, but on the other hand, they aren't making any credibility. I'm sorry? Yes, Your Honor, it could say that, but on the other hand, that's – So then there was an adverse credibility determination, at least with regard to identity, or not? It should not, Your Honor. Well, it seems like the BIA cited Bourbono, and the BIA stated that it adopted and affirmed the IJ's decision to the extent that she determined that the respondent failed to establish his identity and failed to carry his burden of proof. Specifically, the BIA found that Singh failed to carry his burden of proof with respect to establishing past persecution or a well-founded fear of future persecution. The BIA noted it was adopting the IJ's decision, particularly the IJ's quote, unquote, concerns with the reasons for the authority's alleged interest in the respondent. Finding that the petitioner had not established past persecution, then a reasonable fear of future persecution or the likelihood of torture, the BIA affirmed to IJ. So it's a little bit of a mixed bag here. Yes, Your Honor. So it seems that the BIA did act on some of those things. But the BIA also says no single concern would lead us to conclude that the respondent's story is untrue. Nonetheless, they concluded that the respondent's story was untrue in the end. So what does that mean if they're not saying he's lying? He says I'm this person. They say you're not that person. That means he must be lying. They're not saying he's not that person. They're saying the identity documents, he's not established his identity. Well, they use this burden of proof language with regard to the establishing past persecution. But with regard to identity, they say he failed to establish his identity. Yes, Your Honor. They say he failed to credibly establish his identity. That seems to be something other than saying that he didn't carry his burden of proof. They seem to say that he wasn't who he said he was. That is true, but then why are they saying that the respondent's story, there's nothing here to conclude the respondent's story is not true or untrue? Respondent, what does the respondent? Let's suppose he did establish, fail to establish, credibly establish his identity, i.e., he was not credible with regard to his identity. Does that scotch his silent claim entirely? Say that again, Your Honor. I only have one more. If he hasn't established his identity, is that the end of his silent claim? No, Your Honor, because this is a pretty real ID act, and if his other parts of his testimony were true and believable, then that alone, his testimony alone would have been sufficient to establish who he is and where he came from. I only have 51 seconds left, Your Honor. I'd like to use that for rebuttal. Good morning. May it please the Court. My name is Jacob Basharoff. I'm here on behalf of the Attorney General of the United States. The two main issues in the incident case is the adverse credibility finding with respect to identity. I'm sorry. The two main issues in the incident case is the adverse credibility finding with respect to identity, and the second is that the board's finding. Well, the first issue is was there or wasn't there an adverse credibility finding. It doesn't matter. Yes, Your Honor. There was an adverse credibility finding. I'm sorry? Yes. The answer is yes to your question. There was. And why is all this talk about burdens of proof? Although an adverse credibility determination may not be necessary, the testimony may result in his failure to meet the burden of proof. No single concern relates to the conclusion that the story is untrue, but the constellation of problems leads us to agree that he hasn't met the burden of proof. What does all that mean? Well, Your Honor, it appears that the main focus of the one of the main focuses in this case was the agency finding that petitioner failed to establish credibly that he was from Punjab, India. Well, okay. But on the adverse credibility, here's the question that I have, that if they didn't specifically make an adverse credibility finding before they went to the identity issue, then you're conceding this is a pre-real ID case, right? Yes, Your Honor. So then those documents, albeit they seem pretty suspicious, but he did say if there was an adverse credibility finding before that, then the fact that he said that's where he's from, we have to presume that credible, right? Yes, Your Honor. And so then he's been, he would have, if they're absent an adverse, specific adverse credibility finding, then he's presumed to be the person that he says he's Well, that's a very good question, Your Honor. It appears that Well, thank you. I would like a very good answer. No, Your Honor. No. So that would help me. It's something that I thought about as well. And I was thinking that perhaps the board, and for that matter, that when they addressed the issues presented, they bifurcated the identity, which they thought that was the foundation of Petitioner's claim, because if he cannot establish that he was from Punjab and that he claimed to be who he was, he claimed to be But post-real ID would, no problem there, right? Yes, Your Honor. But it's pre-real ID. That's right. So that's, so don't we need an explicit adverse credibility finding that's supported? And if they didn't make that, then isn't there a problem with the identity? Well, then we have to, well, then it's possible to treat that adverse credibility finding as in itself separate from the burden of proof, which might be interpreted as an alternative finding in the incident case. That's not a way to view that, the board's finding here, because what it appears that they found that he was not credible when he testified with respect to his identity, which is they didn't, it appears they didn't put it as an additional burden in this case, but then they went to proceed and discuss the other evidence. Let's assume that he's the person who he says he is, and let's get to the rest of the case then. Now, what's your position on the rest of the case? Do we treat him as credible or not credible, or do we view incidents separately as credible or not credible? Your Honor, I believe there's no reason why not to view him incredible. It appears that that, and Petitioner's Counsel pointed out that the board stated that no single incident in the record suggested he, whatever he testified about was untrue. So I suggest that the Court probably should view him as a credible witness when he testifies, well, aside from the adverse credibility finding with respect to his identity. So... But pre-real ID, if the credibility finding is based on he doesn't have good documents, would that go to the heart of the claim? Well, I believe that here that, are you asking specifically with respect to the evidence he submitted to establish his identity, Your Honor, if I may clarify? The identification, yes. That's what I'm talking about. Okay. Those passports and the fuzzy things. Well, he still is required to corroborate his claim if the IG identified issues with his identity. I mean, it's part of what he has to do. Let's say he was who he said he was. Is there an additional finding? I mean, it's very hard to pierce either the IJ or BIA opinion. Yes. Is there a finding? What is the finding, as you understand it, with regard to his story about the two people who jumped off the tractor and he was persecuted because of it and so on? Is it that it didn't happen? Is it that it wasn't because of political opinion? Is it that what is it? What's the finding? The finding appears from the IJ that it did happen, but it wasn't on account of his political opinion. That's my reading of that. That's the reading of that. So the IJ believed him about that tractor incident but just didn't believe it was political or? He didn't think it was political. He didn't think it was on account of political opinion. That's what the IJ's decision at least suggests. You can't believe what he said and say it wasn't because there were two parts. One was, you know, did they suspect him of being in league with the terrorists? And then the second part of the explanation has to do with that they thought he was a political opponent in his hometown. I'm not clear to what the IJ thought about each. It seems to me that as to the first question of whether they thought he was a terrorist or in league with him had given a ride to the terrorists. He said they beat him because of that. I think that they were finally persuaded that he wasn't a terrorist. Is that your understanding? It appears, you know, essentially, yes. They wanted to get information about the terrorists. They wanted to get they also believed that he was somehow involved with them and hiding weapons from them in his field. So that was the main reason why they arrested him. They don't suspect him to be a terrorist, but they might have thought that he was, you know, somehow assisting them. So, I think that's what the IJ's decision and Wilson's decision are. Well, if we believe that the agency erred in its identification decision because it did not explicitly make an adverse credibility determination, should we remand the case to the agency to reconsider its credibility identification, asylum withholding and convention against torture determinations? Or do we decide them here? Well, you only have to remand the case if you believe that the agency did not, well, that risk credibility here is not supported by substantial evidence. You cannot reverse it. You have to remand the case back to the board. Was this whole way of proceeding, it seems to me, this is a very old case. Yes, Your Honor. Was there a time period when the BIA was doing this sort of burden of proof thing instead of calling it adverse credibility and isn't doing that anymore and that's why we're so confused? I mean, it just – I mean, what I'm tempted to do is send it back to the BIA and say what are you talking about. But is your observation that this is sort of a time-bound problem, whether we're proceeding in this fashion for a while and have stopped? Well, Your Honor, I believe that – Your Honor, you're putting me in a very awkward position. I have to comment on the work product of the Board of Immigration Appeals. Well, I don't think so, actually. So it appears that, I mean, the board does a pretty good job now. I'm sorry. I can't hear you. The board does a very good job now. I mean, you put me in a position where I have to comment on the board's policy. All right. Should we do that? Should we simply say we don't understand your opinion? Tell us what you mean. Well, Your Honor, even though the board does not have a duty to articulate, it still has to provide analysis that is clear enough for the board to – sorry, for the courts to review. So if the court is not clear as to what the board said, the court should remand to the board in order for the board to address the court's concerns. All right. Thank you, counsel. Thank you, Your Honor. Do you feel a compulsion to rebut this? I don't, Your Honor. But if you want me to use the 51 seconds I have, I can. We have no desire for you to. If I could just briefly rebut one of the things he said. All right. 48 seconds. Got it, Your Honor. As regards the nexus issue, Your Honor, the respondent did testify that during the investigation, the police not only asked him about the men but also about his political affiliations which tie up with his previous arrest and his participation in the elections. Thank you, counsel. That's 117. All right. The court will take a short morning recess.
judges: Reinhardt, Berzon, Callahan